IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ANTHONY HILDEBRAND,

    Plaintiff,

v.

ALLEGHENY COUNTY, ALLEGHENY
COUNTY DISTRICT ATTORNEY'S
OFFICE,

    Defendants.

12cv1122
**ELECTRONICALLY FILED**

## MEMORANDUM OPINION

Before the Court are two separate Motions to Dismiss Plaintiff's Complaint. Defendant Allegheny County ("AC") has filed a Motion to Dismiss the Complaint in its entirety under Fed.R.Civ.P. 12(b)(6), while Defendant Allegheny County District Attorney's Office ("DA's Office") filed a Partial Motion to Dismiss (seeking dismissal of Counts II, III and IV) under Fed.R.Civ.P. 12(b)(6) and Fed.R.Civ.P. 12(f). See doc nos. 7 and 5, respectively. Plaintiff filed a Brief in Opposition to each Motion to Dismiss. See doc. nos. 12 and 9, respectively.

The matters are now ripe for adjudication.

### I. STANDARD OF REVIEW

#### A. The Motions Filed Under Fed.R.Civ.P. 12(b)(6)

In considering a Rule 12(b)(6) motion, federal courts require notice pleading, as opposed to the heightened standard of fact pleading. Fed. R. Civ. P. 8(a)(2) requires only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds on which it rests.'" *Bell Atlantic Corp. v. Twombly,* 550 U.S. 554, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Building upon the landmark United States Supreme Court decisions in *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the United States Court of Appeals for the Third Circuit explained that a District Court must undertake the following three steps to determine the sufficiency of a complaint:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the Complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the Complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged.

*Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (quoting *Iqbal*, 556 U.S. at 675, 679).

The third step of the sequential evaluation requires this Court to consider the specific nature of the claims presented and to determine whether the facts pled to substantiate the claims are sufficient to show a "plausible claim for relief." *Fowler*, 578 F.3d at 210. "While legal conclusions can provide the framework of a Complaint, they must be supported by factual allegations." *Id.* at 210-11; *see also Malleus,* 641 F.3d at 560.

This Court may not dismiss a Complaint merely because it appears unlikely or improbable that Plaintiff can prove the facts alleged or will ultimately prevail on the merits. *Twombly*, 550 U.S. at 563 n.8. Instead, this Court must ask whether the facts alleged raise a reasonable expectation that discovery will reveal evidence of the necessary elements. *Id.* at 556. Generally speaking, a Complaint that provides adequate facts to establish "how, when, and where" will survive a Motion to Dismiss. *Fowler*, 578 F.3d at 212; *see also Guirguis v. Movers Specialty Servs., Inc.*, 346 F. App'x. 774, 776 (3d Cir. 2009).

In short, a Motion to Dismiss should not be granted if a party alleges facts, which could, if established at trial, entitle him/her to relief. *Twombly*, 550 U.S. at 563 n.8.

### B. The Motion Filed Under Fed.R.Civ.P. 12(f)

Federal Rule of Civil Procedure 12(f) permits a party to seek to have stricken from any pleading "an insufficient defense or any redundant, immaterial, impertinent or scandalous matter."

## II. DISCUSSION – DEFENDANTS' MOTIONS TO DISMISS[1]

### A. Count I – Age Discrimination ("ADEA")

A party seeking relief for employment discrimination under Title VII must first establish that he timely filed a charge with the Equal Employment Opportunity Commission ("EEOC"), that he received a right to sue letter, and that he filed his Complaint in Federal Court within ninety days of a his receipt of a Notice of Right to Sue letter from the EEOC. See *Burgh v. Borough Council of the Borough of Montrose*, 251 F.3d 465, 470 (3d Cir. 2001). The ADEA requires a plaintiff to file a charge of discrimination with the EEOC within three hundred days of the alleged discriminatory act.

Defendant AC argues that Count I of the Complaint – Plaintiff's ADEA claim under Title VII – should be dismissed because Plaintiff failed to exhaust his administrative remedies prior to filing this lawsuit. Plaintiff counters by arguing that his Complaint, specifically paragraph three, alleges enough factual information under the *Iqbal/Twombly* standard to survive this Motion to Dismiss.

Paragraph three of the Complaint reads as follows:

---

[1] Because the Court writes primarily for the parties who are familiar with the details of this case, and because the Court accepts all well-pled facts set forth in Plaintiff's Complaint as true for purposes of deciding these Motions to Dismiss, the Court has declined to provide a separate recitation of the relevant facts as pled by Plaintiff. To the extent the Court found that the recitation of ay of the facts was necessary, those facts have been set forth within the individual sub-parts of the "Discussion" section herein.

> All conditions precedent to jurisdiction under section 706 of Title VII, have occurred or been complied with. Plaintiff filed a claim of employment discrimination with the [EEOC]. The EEOC issued a Notice of Right to Sue. The Complaint is filed within 90 days of such Notice of Right to Sue.

Doc. no. 1, ¶ 3. A copy of the Right to Sue letter was not attached to the Complaint.

Because paragraph three and the remainder of the Complaint fails to provide any facts, *i.e.* specific dates, as to when Plaintiff raised his claim with the EEOC and when the EEOC issued its right to sue letter to Plaintiff, and because Plaintiff failed to attach his Right to Sue to the Complaint, this Court is constrained to concur with Defendant AC that the Complaint falls short of providing the facts to establish whether he has adequately exhausted his administrative remedies. Accordingly, the Court will grant Defendant AC's Motion to Dismiss Count I of the Complaint, but will do so without prejudice to allow Plaintiff time to file an Amended Complaint establishing the factual basis to support the legal conclusion that he has exhausted his administrative remedies.

### B. Count II – Pennsylvania's Whistleblower Law

The pertinent sections of Pennsylvania's Whistleblower Law read as follows:

> (a) Persons not to be discharged.--No employer may discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee or a person acting on behalf of the employee makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of wrongdoing or waste.
>
> (b) Discrimination prohibited.--No employer may discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee is requested by an appropriate authority to participate in an investigation, hearing or inquiry held by an appropriate authority or in a court action.

43 Pa.C.S.A. §1423.

> The following words and phrases when used in this act shall have the meanings given to them in this section unless the context clearly indicates otherwise:
>
> \* \* \*
>
> "Good faith report." A report of conduct defined in this act as wrongdoing or waste which is made without malice or consideration of personal benefit and which the person making the report has reasonable cause to believe is true.
>
> \* \* \*
>
> "Whistleblower." A person who witnesses or has evidence of wrongdoing or waste while employed and who makes a good faith report of the wrongdoing or waste, verbally or in writing, to one of the person's superiors, to an agent of the employer or to an appropriate authority.
>
> "Wrongdoing." A violation which is not of a merely technical or minimal nature of a Federal or State statute or regulation, of a political subdivision ordinance or regulation or of a code of conduct or ethics designed to protect the interest of the public or the employer.

43 Pa.C.S.A. § 1422.

Each of the Defendants contend that Plaintiff's Complaint fails to adequately assert a cause of action for violation of Pennsylvania's Whistleblower Law, 43 Pa.C.S.A. §§ 1421 *et seq*. However, each Defendant has a slightly different basis for their respective position.

Defendant AC suggests that Plaintiff's Complaint fails to allege facts which establish "wrongdoing" and/or "good faith report" within the meaning of the Whistleblower Law.

Defendant DA's Office contends that: (1) the facts alleged by Plaintiff in support of the "wrongdoing" prong of the Whistleblower Law do not constitute "wrongdoing" as that term is defined; (2) the Complaint itself demonstrates that Plaintiff failed to make a "good faith report" within the meaning of the Whistleblower Law; and (3) Plaintiff failed to assert the causal connection between his whistleblowing and his termination.

5

In response to the arguments made by both Defendants, Plaintiff contends that paragraph 11, at subparagraphs H-I, L, S-Y, and DDD of his Complaint provide the requisite facts necessary to support a plausible claim under Pennsylvania's Whistleblower Law.

This Court does not entirely agree with either Plaintiff or Defendants.

First, this Court acknowledges that the Whistleblower Law's definition of "wrongdoing" encompasses more than technical violation of a Federal or State statute. It can also encompass a violation of a regulation, a code of conduct, or ethics "designed to protect the interest of the public or the employer." Although a violation can be inferred, generally, from the allegations set forth in paragraph 11 of the Complaint (when read as a whole), the law under *Iqbal* and *Twombly* requires more than that. To be in compliance with *Iqbal*, Plaintiff's Complaint needs to definitively state what statute, regulation, code of conduct, or ethics code was violated by one or both Defendants.

Second, Plaintiff's Complaint falls short of clearly drawing the causal connection between the alleged good faith report of the alleged wrongdoing and the Defendants' alleged reprisal. Although it can be inferred that the alleged good faith reports preceded the alleged reprisal, the Complaint is not clear on this point, and precision and clarity are required by the *Iqbal/Twombly* standard.

Finally, because the "good faith" component of the Whistleblower Law is driven, in part, by the definition of wrongdoing, it is premature to determine whether Plaintiff's allegations that he made alleged "good faith" reports of wrongdoing are sufficient under *Iqbal/Twombly*. For all of these reasons, the Court will grant the Defendants' Motions to Dismiss Count II of the Complaint, but will do so without prejudice to allow Plaintiff time to file an Amended Complaint.

## C. Count III – Title VII of Civil Rights Act: Retaliation

The United States Court of Appeals for the Third Circuit has recently summarized the body of law surrounding Title VII as follows:

> Title VII prohibits discriminatory employment practices based upon an individual's "race, color, religion, sex, or national origin." See 42 U.S.C. § 2000e–2(a). A plaintiff carries the initial burden of establishing a *prima facie* case. See *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). To establish a prima facie case, a Title VII plaintiff must demonstrate that: 1) he belongs to a protected class; 2) he was qualified for the position; 3) he was subject to an adverse employment action; and 4) the adverse action was under circumstances giving rise to an inference of discrimination. *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir.2003). A defendant can rebut the claim by presenting a legitimate, non-discriminatory reason for the employment action. *Id*. The plaintiff must then "establish by a preponderance of the evidence that the employer's proffered reasons were merely a pretext for discrimination." *Id*.

*Young v. School Dist. of Philadelphia* 427 Fed.Appx. 150, 153 (3d Cir. 2011).

In their Briefs in Support of Dismissal, both Defendants correctly noted that Title VII applies to those individuals who believe they suffered some form of discrimination due to race, color, religion, sex, or national origin. Doc. No. 8, p. 5, and Doc. No. 6, p. 3. Both Defendants argue that Plaintiff does not allege any discriminatory acts on the part of either Defendant predicated upon Plaintiff's race, color, religion, sex, or national origin. Id. Plaintiff conceded in one of his Briefs in Opposition that he incorrectly asserted his retaliation claim under Title VII. Doc. No. 10, p. 9.

Accordingly, the Court will grant Defendants' Motion to Dismiss Plaintiff's Retaliation claim predicated upon Title VII.

### D. Count IV – First and Fourteenth Amendments: Equal Protection

Title 42 of the United States Code, § 1983 states that, "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ." 42 U.S.C. § 1983. In *Kneipp v. Tedder*, the United States Court of Appeals for the Third Circuit explained that "[s]ection 1983 does not, by its own terms, create substantive rights; it provides only remedies for deprivations of rights established elsewhere in the Constitution or federal laws[,]" and held that "[i]n order to establish a section 1983 claim, a plaintiff must demonstrate a violation of a right secured by the Constitution and the laws of the United States [and] that the alleged deprivation was committed by a person acting under color of state law." *Kneipp*, 95 F.3d 1199, 1204 (3d Cir. 1996) (internal quotes and citations omitted).

Municipalities, such as Defendant AC, can be subject to § 1983 liability. *See Monell v. Dept. of Soc. Svcs. of City of New York*, 436 U.S. 658, 690 (1978) (Local governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.). "[A]lthough the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments, like every other § 1983 'person,' by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Id*. at

690-91. However, Section 1983 "did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort[,] [i]n particular, we conclude that a municipality cannot be held liable solely because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* at 691.

In essence, *Monell* created a "two-path track" to municipal liability, depending on whether a plaintiff's Section 1983 claim is premised on a municipal policy or a custom. *See Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996). In *Andrews v. City of Philadelphia*, 895 F.2d 1469 (3d Cir. 1990), the United States Court of Appeals for the Third Circuit provided greater clarity concerning on these two sources of liability:

> Policy is made when a "decisionmaker possess[ing] final authority to establish municipal policy with respect to the action" issues an official proclamation, policy, or edict. . . . A course of conduct is considered to be a "custom" when, though not authorized by law, "such practices of state officials [are] so permanent and well-settled" as to virtually constitute law.

*Id.* at 1480 (*quoting Monell*, 436 U.S. at 690) (internal citations omitted).

Under either the policy or the custom track, "a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990) (*citing Andrews*, 895 F.2d at 1480); *see also, Watson v. Abington Twnshp.*, 478 F.3d 144, 156 (3d Cir. 2007). In order to determine who has policymaking responsibility, "a court must determine which official has final, unreviewable discretion to make a decision or take an action." *Andrews*, 895 F.2d at 1481.

Here, both Defendants argue that the Complaint fails to allege facts which could support either theory – *i.e.,* that a policy or a custom was in place which violated Plaintiff's First and

9

Fourteenth Amendment rights. Defendant DA's Office also contends that it is not a "person" under Section 1983, and further argues that Plaintiff failed to allege a causal connection between his termination and his exercise of his First Amendment rights.

In his Briefs in Opposition to the Defendants' respective Motions to Dismiss, Plaintiff relies on the allegations found in paragraph eleven to support his contention that he has adequately identified a policy or custom which violated Plaintiffs' First and Fourteenth Amendment rights. Doc. No. 10, p. 11 and Doc. No. 12, p. 10. Plaintiff's Complaint contains an allegation whereby various, specifically-identified individuals, one of whom is classified as Plaintiff's "direct supervisor," "began an official campaign to rid the [Defendants'] offices of older employees . . . ." Doc. No. 1, ¶ 11(B). Plaintiff's Complaint also alleges that Plaintiff's direct supervisor and one other specifically-identified individual failed to provide him with overtime and "better" work space and automobiles due to his age and made "public comments in the office about needing to get rid of the older employees." Doc. No. 1, ¶¶ 11(FF) – (II). However, the Complaint fails to allege or identify a specific policy the name of the person who terminated Plaintiff's employment. See Doc. No. 1, ¶ 10, ("On February 18, 2011, the [Defendants] terminated [Plaintiff's] employment.").

Moreover, nowhere in his Complaint does Plaintiff allege that either of these individuals are "decisionmakers" with the final authority to establish a policy. Similarly, Plaintiff fails to allege which of these individuals (if either of them) had the power to acquiesce to the alleged well-settled custom of discriminating against older employees. Accordingly, the Court finds that the Complaint is deficient with regard to his Section 1983 claim, and will grant both of the Defendants' Motions to Dismiss, without prejudice, in this regard.[2]

---

[2] The Court acknowledges Defendant DA Office's argument that it is not a separate entity from Defendant County and thus, not a separate entity subject to Section 1983 liability. In support of this position, Defendant DA's Office

### E. Counts V and VI – Pennsylvania Human Relations Act Violations

Defendant AC was the only Defendant to file a Motion to Dismiss Counts V and VI of the Complaint, both of which allege that Plaintiff's rights under the Pennsylvania Human Relations Act ("PHRA") were violated. Defendant AC notes that nowhere in either of these two Counts does the Plaintiff assert any allegations against Defendant AC.

Plaintiff concurs that Counts V and VI "inadvertently refer to only [Defendant DA's Office] and not [Defendant AC]." Doc. No. 12, p. 12. However, Plaintiff argues that by incorporating all prior averments he has preserved his PHRA claims against Defendant AC. Id.

The Court will grant Defendant AC's Motion to Dismiss these two Counts, without prejudice, thereby allowing Plaintiff time to amend his pleading in this regard should he choose to do so.

### F. Punitive Damages

Both Defendants contend that Plaintiff is not entitled to recover punitive damages under the ADEA, Title VII, or Pennsylvania's Whistleblower Law. In addition, both Defendants claim they are immune from punitive damages under Section 1983.[3]

Plaintiff concedes the following: (1) punitive damages are unavailable to him under Pennsylvania's Whistleblower Law; (2) Defendants are immune from punitive damages under Section 1983; and (3) he has no viable Title VII claim. Doc. No. 10, pg. 9 and Doc. no. 12,

---

cited caselaw. The Court notes that Plaintiff did not directly address this argument nor the caselaw cited in his Brief in Opposition. If Plaintiff chooses to file an Amended Complaint and continues to assert the Section 1983 claim against Defendant DA's Office, and if Defendant DA's Office files a Motion to Dismiss the Section 1983 claim from the Amended Complaint, the Court would urge both parties to more fully brief the specific issue of whether Defendant DA's Office can be subject to Section 1983 liability. At this point in time, the Court declines to rule on the issue of whether Defendant DA's Office is an entity subject to Section 1983 liability, due to the fact that it has decided that Plaintiff's Complaint currently lacks enough factual information to sustain a plausible cause of action against either Defendant.

[3] Plaintiff did not seek punitive damages under his PHRA claims, presumably because such damages are unavailable under the PHRA. See, *Hoy v. Angelone*, 720 A.2d 745, 749 (Pa. 1998) ("While punitive damages also serve to deter, simply put, we do not consider punitive damages to be consistent with the remedial nature of the Act.").

p. 13. Given these concessions, Plaintiff's recovery of any punitive damage award against either Defendant would be limited to his ADEA claim.

In this regard, Plaintiff concedes that the United States Court of Appeals for the Third Circuit has not ruled on whether punitive damages are available under the ADEA. Thus, this Court may obtain guidance from other courts within the Third Circuit and the body of case law on this issue from other Circuits.

Recently, in *Kelly v. U.S. Steel Corp.*, 2011 WL 3607458, (W.D. Pa. August 16, 2011), Judge McVerry noted the following when granting U.S. Steel's Motion to Dismiss Kelly's punitive damages from his ADEA claim:

> Defendant likewise contends that Kelly may not recover punitive damages under the ADEA. Although the United States Court of Appeals for the Third Circuit has not addressed this issue, all of the courts of appeals which have done so have denied claims for punitive damages in ADEA cases. See *Bruno v. Western Elec. Co.*, 829 F.2d 957, 966–67 (10th Cir. 1987) (collecting cases from other circuits). Several members of this Court and a number of our sister courts within the Third Circuit have denied claims for punitive damages under the ADEA as well. See, e.g., *Zurik v. Woodruff Family Services*, 2009 WL 4348826, at *1 (2009 W.D. Pa. Dec. 1, 2009); *Baldwin v. Peake*, 2009 WL 1911040, at *3 (2009 W.D. Pa. July 1, 2009); *Steward v. Sears Roebuck & Co.*, 312 F.Supp.2d 719, 730 (E.D. Pa. 2004). The Court finds those decisions persuasive and agrees that the ADEA does not authorize claims for punitive damages.

*Kelly* at *3.

Based on Plaintiff's concessions, coupled with this Court's Opinion that punitive damages are not available to Plaintiff under the ADEA, the Court finds that Plaintiff may not pursue punitive damages against either Defendant. Accordingly, Defendants' Motions to Dismiss punitive damages from this case will be granted.

### F. Compensatory Damages

Both Defendants argue, and Plaintiff concedes, that Plaintiff cannot recover compensatory damages for pain, suffering, humiliation, emotional distress, and anxiety under the

ADEA. *See Watcher v. Pottsville Area Emerg. Med. Svcs., Inc.*, 248 Fed.Appx. 272, 277 (3d Cir. 2007) (a plaintiff cannot recover liquidated damages for pain and suffering under the ADEA), *citing Rodriguez v. Taylor,* 569 F.2d 1231 (3d Cir. 1977). *See also Rogers v. Exxon Research & Engineering Co.,* 550 F.2d 834, 841-42 (3d Cir. 1977) (". . . we hold that damages for 'pain and suffering' or emotional distress cannot properly be awarded in ADEA cases.").

Accordingly, Defendants' Motions to Dismiss Plaintiffs' claim for compensatory damages pursuant to the ADEA will be granted.

### III. DISCUSSION – DEFENDANT'S MOTION TO STRIKE

Rule 12(f) of the Federal Rules of Civil Procedure provides: "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f).

As two Courts in this district have noted:

> The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." *Natale v. Winthrop Resources Corp.*, Civil Action No. 07-4686, 2008 WL 2758238 at *14 (E.D. Pa. July 9, 2008) (*quoting McInerney v. Moyer Lumber and Hardware, Inc.*, 244 F.Supp.2d 393, 402 (E.D. Pa. 2002). While "[a] court possesses considerable discretion in disposing of a motion to strike under Rule 12(f)," such motions are "not favored and usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case." *Id*. (*quoting River Road Devel. Corp. v. Carlson Corp.*, Civ. A. No. 89-7037,1990 WL 69085, at *2 (E.D. Pa. May 23, 1990). Striking some or all of a pleading is therefore considered a "drastic remedy to be resorted to only when required for the purposes of justice." *Id*. (*quoting DeLa Cruz v. Piccari Press*, 521 F.Supp.2d 424, 428 (E.D. Pa. 2007) (quotations omitted).

*See Thornton v. UL Enterprises*, 2010 WL 1004998, at *1 (W.D. Pa. March 16, 2010) (Cohill, J.), *quoting Adams v. County of Erie, Pa.*, 2009 WL 4016636, at *1 (W.D. Pa. Nov, 19, 2009) (McLaughlin, J.).

Turning to the facts of this case, Defendant DA's office contends that paragraph 11, subparagraphs (ZZ) through (CCC) should be stricken because they do not contain information pertinent to any of the claims alleged by Plaintiff. These paragraphs read as follows:

> ZZ. In early January 2010, Hildebrand overheard a conversation between ADA Claus and Investigator Graber where Claus made incriminating statements concerning the Senator Jane Orie case. Claus and Graber knew Hildebrand overheard this conversation because they got quiet after they first saw Hildebrand and moved away from him.
>
> AAA. In December, 2009 an informal memo was issued by DAs office that any and all political files on DA's computers were to be a erased. Hildebrand spoke with ADA Darryl Parker who advised Hildebrand he was ordered by Zappala personally to come in on December 24, 2009 to delete his political files by the DA himself. It is believed and averred this action was taken in response to a freedom of information request filed by Jane Orie's attorney seeking to have all political files on the district attorney's office computers be produced under the freedom of information act.
>
> BBB. In January 2010 the DA computers were to be sanitized from political references by outside consultant, Fran Zovko. This was done to double check and make sure all political files contained on the DA's computers would be removed before Ms. Botsford responded to the freedom of information request made by Jane Orie or her attorneys.
>
> CCC. Darryl Parker advised Hildebrand he complained to Dawn Botsford that the DA's practice of wiping clean political references from computers was an obstruction of justice and was wrong and should not be done. Darryl Parker was advised to keep his mouth shut and just do as he was told. Hildebrand had no political files on his computer and did not need to comply with the DA's request.

Doc. No. 1, ¶ 11 (ZZ)-(CCC).

In response to Defendant DA Office's argument, Plaintiff contends that once his contributions to the Orie family became known to his superiors in the workplace the harassment and discrimination against him intensified. See Doc. No. 10, p. 15. Plaintiff claims the averments found in subparagraphs 11(ZZ) through (CCC) bear "reasonable relations" to support Plaintiff's First Amendment and Whistleblower claims. Doc. No. 10, p. 15. However, aside from making this blanket statement, Plaintiff's Brief in Opposition to Defendant DA Office's

14

Motion to Strike fails to provide any clear explanation of how the allegations found in these four subparagraphs support his First Amendment or his Pennsylvania Whistleblower Law claim.

The Court notes that Plaintiff's Complaint alleges that Defendants hired Plaintiff in 2005 to work as a detective for the Allegheny County District Attorney's Investigation Unit. Doc. No. 1, ¶ 9. Plaintiff claims that starting in 2009, Defendants "began an official campaign to rid [Defendants'] offices of older employees . . . ." Id. ¶ 11(B). The majority of the remaining subparagraphs to paragraph 11 of Plaintiff's Complaint provide additional details and allegations concerning what Defendants did and did not do to "rid [Defendants'] offices of older employees[,]" and Plaintiff in particular. See ¶ 11(C)-(YY).

Recalling that the purpose of a motion to strike is to "clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters," and while this Court is (generally) not inclined to grant a Motion to Strike under Rule 12(f), facts pled here in subparagraphs 11(ZZ) through 11(CCC) appear to have no relation to the controversy. In addition, the Court finds that these allegations may cause prejudice to Defendant DA's Office and confuse the overarching issues and claims presented by Plaintiff in the case.

For these reasons, the Court will grant Defendant DA Office's Motion to Strike subparagraphs 11(ZZ) through (CCC).

### IV. CONCLUSION

Based on the foregoing law and authority, the Court will enter an appropriate Order consistent with this Opinion wherein the Court has held as follows:

(1) Defendants' Motions to Dismiss will be GRANTED WITH PREJUDICE as to: (1) Count III, Plaintiff's Title VII Claim; (2) Plaintiff's demand for a punitive damage award; and (3) Plaintiff's demand for compensatory damages under the ADEA.

(2) Defendants' respective Motions to Dismiss will be GRANTED, WITHOUT PREJUDICE as to Count I (Plaintiff's ADEA claim), Count II (Plaintiff's Pennsylvania's Whistleblower Law claim), Count IV (Plaintiff's Section 1983 claim) and Counts V and VI (Plaintiff's PHRA claims) of the Complaint.

(3) Defendant DA's Office Motion to Strike subparagraphs 11(ZZ) through (CCC) will also be GRANTED.

s/ Arthur J. Schwab  
Arthur J. Schwab  
United States District Judge

cc: All Registered ECF Counsel