IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ANTHONY HILDEBRAND,

    Plaintiff,                           12cv1122
                                              **ELECTRONICALLY FILED**

        v.

ALLEGHENY COUNTY, ALLEGHENY
COUNTY DISTRICT ATTORNEY'S
OFFICE,

    Defendants.

## MEMORANDUM OPINION

For the second time, there are two separate Motions to Dismiss before this Court. This time, the Motions seek dismissal of Plaintiff's Amended Complaint (doc. no. 15) which was filed subsequent to this Court's prior Opinion and Order (doc. nos. 13 and 14) granting in part Defendants' prior Motions to Dismiss, but allowing Plaintiff the opportunity to file an Amended Complaint. Plaintiff filed his Amended Complaint on December 13, 2012. Doc. no. 15.

Defendant Allegheny County ("AC") and Defendant Allegheny County District Attorney's Office ("DA's Office") filed their respective Motions to Dismiss the Amended Complaint in its entirety under Fed.R.Civ.P. 12(b)(6). See doc nos. 16 and 17, respectively. Plaintiff filed a Brief in Opposition to each Motion to Dismiss. See doc. nos. 21 and 23, respectively.

The matters are now ripe for adjudication.

## I. STANDARD OF REVIEW

In considering a Rule 12(b)(6) motion, federal courts require notice pleading, as opposed to the heightened standard of fact pleading. Fed. R. Civ. P. 8(a)(2) requires only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds on which it rests.'" *Bell Atlantic Corp. v. Twombly,* 550 U.S. 554, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Building upon the landmark United States Supreme Court decisions in *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the United States Court of Appeals for the Third Circuit explained that a District Court must undertake the following three steps to determine the sufficiency of a complaint:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the Complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the Complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged.

*Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (quoting *Iqbal*, 556 U.S. at 675, 679).

The third step of the sequential evaluation requires this Court to consider the specific nature of the claims presented and to determine whether the facts pled to substantiate the claims are sufficient to show a "plausible claim for relief." *Fowler*, 578 F.3d at 210. "While legal conclusions can provide the framework of a Complaint, they must be supported by factual allegations." *Id.* at 210-11; *see also Malleus,* 641 F.3d at 560.

2

This Court may not dismiss a Complaint merely because it appears unlikely or improbable that Plaintiff can prove the facts alleged or will ultimately prevail on the merits. *Twombly*, 550 U.S. at 563 n.8. Instead, this Court must ask whether the facts alleged raise a reasonable expectation that discovery will reveal evidence of the necessary elements. *Id.* at 556. Generally speaking, a Complaint that provides adequate facts to establish "how, when, and where" will survive a Motion to Dismiss. *Fowler*, 578 F.3d at 212; *see also Guirguis v. Movers Specialty Servs., Inc.*, 346 F. App'x. 774, 776 (3d Cir. 2009).

In short, a Motion to Dismiss should not be granted if a party alleges facts, which could, if established at trial, entitle him/her to relief. *Twombly*, 550 U.S. at 563 n.8.

## II. DISCUSSION – DEFENDANTS' MOTIONS TO DISMISS[1]

### A. Count I – Age Discrimination ("ADEA")

Defendant AC argues that Count I of the Complaint – Plaintiff's ADEA claim – should be dismissed because: (1) Plaintiff filed his EEOC charge against the DA's Office, not AC; and (2) Plaintiff failed to timely file his EEOC charge within three hundred days of the last discriminatory act thereby failing to exhaust his administrative remedies prior to filing this lawsuit. Defendant DA's Office similarly argues that Plaintiff's ADEA claim should be dismissed because he failed to timely file his EEOC complaint within 300 days of the last discriminatory act.

---

[1] As noted in its prior Opinion, because the Court writes primarily for the parties who are familiar with the details of this case, and because the Court accepts all well-pled facts set forth in Plaintiff's Amended Complaint as true for purposes of deciding these Motions to Dismiss, the Court has declined to provide a separate recitation of the relevant facts as pled by Plaintiff. To the extent the Court found that the recitation of any of the facts was necessary, those facts have been set forth within the individual sub-parts of the "Discussion" section herein.

Because both parties raised the timeliness of the filing of Plaintiff's EEOC charge as one of the bases upon which to dismiss Plaintiff's ADEA claim, the Court will address that matter first. As this Court previously noted, a party seeking relief for employment discrimination under Title VII must first establish that he timely filed a charge with the Equal Employment Opportunity Commission ("EEOC"), that he received a right to sue letter, and that he filed his Complaint in Federal Court within ninety days of his receipt of a Notice of Right to Sue letter from the EEOC. See *Burgh v. Borough Council of the Borough of Montrose*, 251 F.3d 465, 470 (3d Cir. 2001). The ADEA requires a person to file a "charge of discrimination" with the EEOC:

> (A) within 180 days after the alleged unlawful practice occurred; or
>
> (B) in a case to which section 633(b) of this Title applies, within 300 days after the alleged unlawful practice occurred, or within 30 days after receipt by the individual of notice of termination proceedings under state law, whichever is earlier.

29 U.S.C. § 626(d). "Like Title VII, [the] ADEA has deferral provisions and the time for filing a charge depends on whether deferral applies. In deferral states, such as Pennsylvania, the charge must be filed within 300 days of the allegedly illegal act." *Ruehl v. Viacom, Inc.*, 500 F.3d 375, 382-3 (3d Cir. 2007), quoting *Seredinski v. Clifton Precision Prods. Co.*, 776 F.2d 56, 63 (3d Cir. 1985) (footnote omitted).

Thus, a judicial complaint under the ADEA will be dismissed for failure to exhaust administrative remedies if the supporting EEOC charge was not filed within 300 days of notification to the employee of the adverse employment action.

Turning to this case, the Court begins by noting that in its prior Memorandum Opinion, the Court stated it would issue an Order granting Defendant AC's Motion to Dismiss the ADEA claim because Plaintiff had merely pled a legal conclusion asserting that he met "all conditions precedent" to filing an ADEA claim. See doc. no. 13, p. 4. However, in this same portion of the

Opinion, this Court clearly indicated that despite the fact it was granting Defendant AC's Motion to Dismiss the ADEA claim, it was doing so "without prejudice to allow Plaintiff time to file an Amended Complaint establishing the factual basis to support the legal conclusion that he has exhausted his administrative remedies." Id.

Plaintiff's Amended Complaint (doc. no. 15), which was filed shortly after the Court issued its prior Opinion, contains the following facts relevant to the exhaustion and timeliness issue now re-raised by Defendant AC and raised by Defendant DA's Office:

> 10. On February 18, 2011, the [DA's Office] and AC terminated [Plaintiff's] employment.

> \* \* \*

> [12.] NNN. On February 18, 2011, [Plaintiff] was suspended for five (5) days without pay. [Plaintiff] filed a grievance with Dawn Botsford on March 8, 2011. The hearing lasted twenty (20) minutes. Botsford affirmed the five (5) day suspension of [Plaintiff] without pay. . . .

> \* \* \*

> [12.] PPP. On March 31, 2011[,] the union voted not to appeal [Plaintiff's] grievance and he was terminated on May 7, 2011.

> \* \* \*

> *The Termination of Detective Hildebrand*

> 13. On or about February 1, 2011, [Plaintiff] was suspended without pay for unauthorized use of a government vehicle. The automobile use resulted in [Plaintiff's] termination on or about February 18, 2011.

> 14. [Plaintiff] was given no reason for his termination in the February 18, 2011 letter discharging him sent by Logan.

> 15. A March 14, 2011 letter sent [to] [Plaintiff] by Dawn Botsford is when Hildbrand first heard he was discharged for lying to his supervisors in addition to his personal use of the DA supplied motor vehicle. Prior to this date, [Plaintiff] was advised he was terminated only for unauthorized use of a DA issued vehicle.

5

Doc. no. 15, ¶¶ 10, 12 NNN, 12 PPP, 13-15.

Plaintiff attached to his Amended Complaint, several documents which this Court may also consider. Relevant to the exhaustion and timeliness argument are his EEOC Charge of Discrimination (hereinafter "Charge") ( Exhibit 1 to the Amended Complaint, doc. no. 15-1), and a letter from Dennis Logan, Chief of Detectives, County of Allegheny, Office of the District Attorney, dated February 18, 2011 (hereinafter "February 18, 2011 Letter"). Exhibit 3 to the Amended Complaint, doc. no. 15-3.

The Charge, prepared by Plaintiff and/or his counsel, indicates that the document was filed on Jan 11, 2012. Doc. no. 15-1, p. 1. The document also identifies the earliest date of discrimination as "02-01-2011," and the latest date of discrimination as "04-30-2011." Id. The relevant "particulars" set forth within the Charge read as follows:

> 2. On February 18, 2011, Chief Dennis Logan suspended me for five (5) days without pay for unauthorized use of a government vehicle. On April 30, 2011, Chief Dennis Logan told me I was discharged for being untruthful.

Id.

The February 18, 2011 Letter, signed by Chief Dennis Logan, reads in pertinent part as follows:

> I suspended you for five (5) days without pay, pending discharge, effective February 11, 2011 for charges outlined in the Disciplinary Action Report ("DAR"), a copy of which I gave to you on February 1, 2011. You were given five (5) work days to respond in writing stating the reason or reasons why you should not be discharged. I have received and read your response letter and find it unsatisfactory. Therefore, you are terminated from employment with the Allegheny County District Attorney's Office effective February 18, 2011. . . .

Doc. No. 15-3.

As is evident from the statements made within the four corners of Plaintiff's Amended Complaint, as well as within those documents attached to the Amended Complaint,

6

inconsistencies exist with respect to the actual date of Plaintiff's termination.[2] However, this Court notes that paragraphs 10, 13 and 14 of the Amended Complaint (quoted above) all indicate that Plaintiff was terminated on February 18, 2011, and these statements are corroborated by the statement set forth within the February 18, 2011 Letter, attached to the Amended Complaint.

However, Plaintiff provided a few dates which post-date Plaintiff's February 18, 2011 termination. These can be found at paragraphs "12. NNN." and "12. PPP." of the Amended Complaint as well as the April 30, 2011 date set forth in the Charge. See doc no. 15, ¶¶ 12. NNN. and 12. PPP.; and doc. no. 15-1. The Court notes that Plaintiff failed to provide any facts in his Amended Complaint related to the April 30, 2011 date, which he identified in his Charge as the "latest" date discrimination took place. In fact, there is no mention of the April 30, 2011 date in the Amended Complaint. Thus, the only information related to the April 30, 2011 date is Plaintiff's statement found within the Charge where Plaintiff indicated that "Chief Dennis Logan told me I was discharged for being untruthful." Doc. No. 15-1. Plaintiff fails to explain how this statement allegedly made on April 30, 2011 can be construed as an act of age discrimination against Plaintiff.

In addition, sub-paragraphs "12. NNN." and "12. PPP." provide facts concerning Plaintiff's termination date which conflict with facts stated elsewhere in the Amended Complaint and in the exhibits attached to the Amended Complaint. Sub-paragraph "12. NNN." indicates Plaintiff was suspended for five days on February 18, 2011 – not terminated. Sub-paragraph "12. PPP." reads that Plaintiff was terminated on May 7, 2011.

---

[2] In deciding Motions to Dismiss pursuant to Rule 12(b)(6), courts generally consider only the allegations in the Complaint, exhibits attached to the Complaint, matters of public record, and documents that form the basis of a claim. See *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997); accord *Lum v. Bank of America*, 361 F.3d 217, 221 n.3 (3d Cir. 2004).

Because this Court has already provided Plaintiff with an opportunity to file an Amended Complaint establishing the requisite factual basis upon which an ADEA claim could survive a Motion to Dismiss for failure to exhaust administrative remedies, and given what counsel for Plaintiff has submitted, this Court finds that there is no plausible basis upon which Plaintiff's ADEA claim can proceed.

First, most of the assertions made by Plaintiff in his Amended Complaint allege that the last act of discriminatory conduct arose on February 18, 2011 – the date Plaintiff was terminated from his employment – and this is corroborated by the February 18, 2011 Letter which Plaintiff attached to his Amended Complaint.

Next, the Court further finds that the other, seemingly contradictory, allegations concerning the date of the last discriminatory act which Plaintiff asserts in his Amended Complaint (and one of which is set forth in his Charge), are either non-discriminatory acts (*i.e.,* Chief Logan stating to Plaintiff on April 30, 2011, that he was discharged for being untruthful) and/or are merely dates for which Plaintiff provided no corroboration (*i.e.,* the termination date of May 7, 2011).

Thus, in light of the *Iqbal/Twombly* standard, the Court finds that Plaintiff's Amended Complaint and attached documentation fail to adequately plead that a timely ADEA claim was filed within three hundred (300) days of the date of the last act of the alleged discrimination – Plaintiff's February 18, 2011 termination. In light of the factual assertions made by Plaintiff in his Amended Complaint, the Court finds that allowing Plaintiff an opportunity to amend his Complaint a second time would be futile.[3]

---

[3] Defendant's Motion to Dismiss will be granted with prejudice. See, *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir.1997) (" . . . a district court may exercise its discretion and deny leave to amend on the basis of . . . futility.").

Accordingly, the Court is constrained to concur with Defendants AC and DA's Office that Plaintiff's Amended Complaint fails to provide facts necessary to establish that he fimely filed is EEOC claim within three hundred days of February 18, 2011. Accordingly, the Court will grant Defendants' Motions to Dismiss Count I of the Complaint, with prejudice.[4]

**B. Count III – Section 1983 Claim**

This Court cited the following law in its prior Opinion, and finds that a discussion of this law will again be revelant to the Defendants' Motions, and thus, restates same herein:

> Title 42 of the United States Code, § 1983 states that, "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ." 42 U.S.C. § 1983. In *Kneipp v. Tedder*, the United States Court of Appeals for the Third Circuit explained that "[s]ection 1983 does not, by its own terms, create substantive rights; it provides only remedies for deprivations of rights established elsewhere in the Constitution or federal laws[,]" and held that "[i]n order to establish a section 1983 claim, a plaintiff must demonstrate a violation of a right secured by the Constitution and the laws of the United States [and] that the alleged deprivation was committed by a person acting under color of state law." *Kneipp*, 95 F.3d 1199, 1204 (3d Cir. 1996) (internal quotes and citations omitted).
>
> Municipalities, such as Defendant AC, can be subject to § 1983 liability. *See Monell v. Dept. of Soc. Svcs. of City of New York*, 436 U.S. 658, 690 (1978) (Local governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.). "[A]lthough the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments, like every other § 1983 'person,' by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received

---

[4] In light of this determination, the Court will not address Defendant AC's argument wherein it contends that because Plaintiff failed to file the EEOC Charge against Defendant AC, Defendant AC cannot be held legally liable for any viable ADEA claim filed by Plaintiff. Similarly, the Court will not address Defendant DA's argument that Plaintiff's Complaint was filed with this Court two days too late, and thus, not timely filed within ninety (90) days from the day he received his Right to Sue Notice.

formal approval through the body's official decisionmaking channels." *Id*. at 690-91. However, Section 1983 "did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort[,] [i]n particular, we conclude that a municipality cannot be held liable solely because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* at 691.

In essence, *Monell* created a "two-path track" to municipal liability, depending on whether a plaintiff's Section 1983 claim is premised on a municipal policy or a custom. *See Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996). In *Andrews v. City of Philadelphia*, 895 F.2d 1469 (3d Cir. 1990), the United States Court of Appeals for the Third Circuit provided greater clarity concerning on these two sources of liability:

> Policy is made when a "decisionmaker possess[ing] final authority to establish municipal policy with respect to the action" issues an official proclamation, policy, or edict. . . . A course of conduct is considered to be a "custom" when, though not authorized by law, "such practices of state officials [are] so permanent and well-settled" as to virtually constitute law.

*Id*. at 1480 (*quoting Monell*, 436 U.S. at 690) (internal citations omitted).

Under either the policy or the custom track, "a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990) (*citing Andrews*, 895 F.2d at 1480); *see also, Watson v. Abington Twnshp.*, 478 F.3d 144, 156 (3d Cir. 2007). In order to determine who has policymaking responsibility, "a court must determine which official has final, unreviewable discretion to make a decision or take an action." *Andrews*, 895 F.2d at 1481.

Doc. no. 13, pp. 8-9.

### 1. Liability - Defendant DA Office

In its prior Opinion, this Court acknowledged in a footnote that Defendant DA's Office had argued that it was <u>not</u> a separate entity from Defendant AC for purposes of Section 1983 liability and cited caselaw in support of this argument. Id., pp. 10-11, n.2. The Court also noted that Plaintiff did not directly address this argument and requested that "both parties . . . more fully brief the specific issue of whether Defendant DA's Office can be subject to Section 1983

10

liability." Defendant DA's office renewed this argument in its current Brief in Support of its Motion to Dismiss (see doc. no. 18, p. 7), and Plaintiff, acknowledging that Defendant DA re-raised this issue, has now conceded that the United States Court of Appeals for the Third Circuit has "held that local prosecutorial offices are not legal entities separate from the local governments of which they are a part . . . and consequently, cannot be sued under [Section] 1983." Doc. no. 23, p. 11, citing *Briggs v. Moore*, 251 Fed. Appx. 77, 79 (3d Cir. 2007); *cert. den.*, 553 U.S. 1057 (2008).

Accordingly, based on the law of this Circuit, Defendant DA's Office cannot be sued under Section 1983.

### 2. Liability - Defendant AC

Plaintiff's Section 1983 claim may only be asserted against Defendant AC, the municipal entity. As noted above, there are two means of demonstrating the required causal link between a municipal "policy" and an alleged constitutional violation. First, a "policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" will suffice. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121 (1988). Second, even if a policy has not received approval through "official decisionmaking channels," customs or practices may be the basis for municipal liability if they are so permanent and well settled that they operate as law. See *Kelly v. Borough of Carlisle*, 622 F.3d 248, 263 (3d Cir. 2010); *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 250 (3d Cir. 2007). That is, "acquiescence in a long-standing practice or custom" that "constitutes the standard operating procedure of the local governmental entity" is grounds for holding a municipality liable. *Jett v. Dallas Independent Sch. Dist.*, 491 U.S. 701, 737 (1989), abrogated on other grounds by statute, 42 U.S.C. §§ 1981, 1977(a).

Applied here, Plaintiff had to set forth facts in his Amended Complaint to plausibly allege that either: (1) a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers violated his constitutional rights, or (2) no "policy" received approval through "official decisionmaking channels," but Defendant AC had customs or practices which were "so permanent and well settled" that they operated as law.

Because Plaintiff's initial Complaint failed to make these requisite allegations, the Court granted Defendants' respective Motions to Dismiss but allowed Plaintiff to amend his Complaint to make the necessary changes to preserve his Section 1983 claim. See doc. no. 13, p. 6. Defendant AC now contends that the Amended Complaint fails to allege the necessary facts to establish a plausible claim under Section 1983. Doc. no. 19, pp. 9-11. This Court agrees.

Plaintiff's Amended Complaint did set forth the names and positions of those who created and enforced the allegedly illegal custom or practice of Defendant AC. The Amended Complaint identified Dawn Botsford, Dennis Logan, and Richard Ealing as "top decisionmakers" within the DA's Office concerning personnel and disciplinary matters, and it claims they were involved in terminating Plaintiff. Doc. no. 15, ¶ 12 C.-E. Plaintiff also alleged that each of these three individuals were employees of Defendant AC. Id.

The law is clear that Defendant AC cannot be held liable merely because it employed the three individuals whom Plaintiff has identified. *Monell*, 436 U.S at 691. There were two ways in which Plaintiff's Amended Complaint could assert a Section 1983 violation against Defendant AC. First, Plaintiff's Amended Complaint could have set forth facts to plausibly establish that these "decisionmakers" were officers of Allegheny County who officially adopted and promulgated a policy statement, ordinance, regulation or decision on behalf of Allegheny County

12

which violated Plaintiff's constitutional rights. *Andrews,* 895 F.2d at 1480 and *City of St. Louis* 485 U.S. at 121. Plaintiff's Amended Complaint does not so allege. See doc. no. 15.

Second, under *Monell* and its progeny, Plaintiff could have alleged facts to plausibly establish that Defendant AC's three employees engaged in a "course of conduct" which came to be considered "a custom." *Id.* Plaintiff would also have had to allege that, although not authorized by law, the practices of the three "officials [were] so permanent and well-settled" as to virtually constitute law. *Id.*

Defendant AC contends that Plaintiff's Amended Complaint fails to make the necessary factual assertions described above. In response, Plaintiff argues that the three AC employees (Botsford, Logan, and Ealing), "engaged in a campaign, [via an] unwritten policy/custom to 'rid the [DA's Office] and AC offices of older employees." Doc. no. 21, p. 9. Plaintiff claims his Amended Complaint alleges that this "campaign" was "widespread" in that younger workers were given overtime, as well as better work areas and vehicles. Id. The Court notes that Plaintiff's Brief in Opposition does not cite any paragraphs within his Amended Complaint pinpointing where he provides facts in support of these assertions.

Moreover, the Court notes that upon its own review of the Amended Complaint, in sub-paragraphs "12. ZZ." through "12. CCC.," Plaintiff alleges that Defendant AC (through two employees, Logan and Ealing) assigned overtime to "younger employees" and further alleges that this was done purely for retaliatory and discriminatory reasons despite Plaintiff's seniority and "right of first refusal" to accept an overtime assignment. Doc. no. 15, ¶ 12. ZZ.-CCC. Plaintiff offers no further details concerning how frequently Plaintiff's overtime work was assigned to younger employees (which would have established the persistence of the alleged course of conduct), nor does he provide any specific facts to indicate how many other "older"

13

employees were subject to this treatment (which would have established the pervasiveness of the alleged course of conduct). Thus, Plaintiff has not provided enough facts to support the legal conclusion that the practices of the three "officials [were] so permanent and well-settled" as to virtually constitute law.

Accordingly, the Court finds that Plaintiff failed to plead a plausible claim under Section 1983 against Defendant AC given the less than adequate facts necessary to establish a plausible claim. The Court finds that the allegations set forth in Plaintiff's Amended Complaint in this regard are largely conclusory in nature and thus, fail to meet the *Iqbal/Twombly* standard.[5]

Because the Court finds that Plaintiff's Section 1983 cannot be prosecuted against Defendant DA's Office, because it is not an entity separate from Defendant AC for Section 1983 purposes, and because the Court finds that Plaintiff's Section 1983 allegations raised against Defendant AC fall short of meeting the *Iqbal/Twombly* standard, the Court will grant both Defendants' Motions to Dismiss this claim.

### C. All Remaining Claims (Count II – Pennsylvania's Whistleblower Law, and Counts IV and V – Pennsylvania Human Relations Act Violations)

Because Plaintiff's only remaining claims are state-law based claims under the Pennsylvania's Whistleblower Law and the PHRA, jurisdiction may be relinquished by this Court. The Court declines to exercise supplemental jurisdiction over the remaining state law claims. The state courts are intimately familiar and regularly adjudicate claims pertaining to the Whistleblower Law and the PHRA. Accordingly, said state law claims will be dismissed pursuant to 28 U.S.C. § 1367(c)(3), albeit without prejudice to Plaintiff's ability to re-file these

---

[5] In addition, although the Court has determined that Plaintiff's Amended Complaint falls short of asserting facts necessary to assert a plausible claim against Defendant AC under *Monell* and its progeny, the Court also notes that Plaintiff's Amended Complaint fails to pinpoint with any clarity which of his Constitutional rights were negatively impacted by Defendant AC. Doc. no. 15, ¶¶ 30-33. The Court finds that the allegations made by Plaintiff claiming violations of his Fourteenth and First Amendment rights to be conclusory in nature, and such assertions also fail to meet the *Iqbal/Twombly* standard.

claims in state court. Also, the dismissal of Plaintiff's state law claims should not work to Plaintiff's disadvantage. See 28 U.S.C. § 1367(d) (providing for at least a thirty-day tolling of any applicable statute of limitation after the claim is dismissed so as to allow Plaintiff the necessary time to re-file his state law claims in state court).

### IV. CONCLUSION

Based on the foregoing law and authority, the Court will enter an appropriate Order consistent with this Opinion wherein the Court has held as follows:

(1) Defendants' respective Motions to Dismiss the Amended Complaint will be GRANTED, WITH PREJUDICE, as to: (1) Count I, Plaintiff's ADEA claim; and (2) Count III, Plaintiff's Section 1983 claim for the reasons set forth above.

(2) Defendants' respective Motions to Dismiss the Amended Complaint will be GRANTED, WITHOUT PREJUDICE, as to Count II (Plaintiff's Pennsylvania Whistleblower Law claim), Count IV and Count V (Plaintiff's PHRA claims), because this Court declines to exercise supplemental jurisdiction over these remaining state law claims. Plaintiff's ability to re-file these claims in state court will not impaired by this dismissal, as 28 U.S.C. § 1367(d) provides for at least a thirty-day tolling of any applicable statute of limitation after the claim is dismissed.

                                                        s/ Arthur J. Schwab
                                                        Arthur J. Schwab
                                                        United States District Judge

cc:     All Registered ECF Counsel