IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ANTHONY HILDEBRAND,

        Plaintiff,

              v.

ALLEGHENY COUNTY DISTRICT
ATTORNEY'S OFFICE,

        Defendant.

12cv1122
**ELECTRONICALLY FILED**

**MEMORANDUM OPINION**

Before the Court is a Motion to Dismiss for Lack of Prosecution filed pursuant to

Fed.R.Civ.P. 41(b), by Defendant, Allegheny County District Attorney's Office ("DA's Office").

Doc. no. 41.   Plaintiff filed a Brief in Opposition to this most recent Motion to Dismiss (see doc.

no. 47).  Defendant filed a Reply to Plaintiff's Brief in Opposition (doc. no. 48), and Plaintiff

filed a Sur-Reply.  Doc. no. 54.  Defendant filed a Sur Sur-Reply.  Doc. no. 55.  The matter is

now ripe for disposition.

## I.   Standard of Review

Federal Rule of Civil Procedure 41 reads in pertinent part:

> (b) Involuntary Dismissal; Effect. If the plaintiff fails to prosecute or to
> comply with these rules or a court order, a defendant may move to dismiss
> the action or any claim against it. Unless the dismissal order states
> otherwise, a dismissal under this subdivision (b) and any dismissal not
> under this rule--except one for lack of jurisdiction, improper venue, or
> failure to join a party under Rule 19--operates as an adjudication on the
> merits.

Fed. R. Civ. P. 41(b).

The United States Court of Appeals for the Third Circuit in *Poulis v. State Farm Fire & Casualty Co.*, 747 F.2d 863 (3d Cir. 1984), held that a district court must consider six factors before it may dismiss a case as a sanction before trial on the merits. The factors are: "(1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense." *Poulis*, 747 F.2d at 868 (emphasis removed).

With the foregoing factors in mind, the Court turns to the circumstances of this case.

## II. Background

Plaintiff originally filed a Complaint against two Defendants, Allegheny County and the DA's Office. Plaintiff was hired on August 15, 2005, as a Detective for the DA's Office Investigative Unit. On February 18, 2011, Plaintiff was terminated from his employment. As a result of his termination, Plaintiff filed a Complaint alleging federal and state claims. As to the federal claims, Plaintiff raised: (1) a § 1983 age discrimination claim, (2) a § 1983 retaliation claim, and (3) an age discrimination claim under the ADEA.

Both Defendants filed separate Motions to Dismiss Plaintiff's original Complaint. This Court granted those Motions without prejudice, thereby enabling Plaintiff to amend his Complaint. Plaintiff next filed an Amended Complaint against the same two Defendants, raising the same federal claims, but added additional factual information. Defendants, once again, filed separate Motions to Dismiss the Plaintiff's Amended Complaint. The Court granted these

Motions in such a way that all of the federal claims against the Defendants were dismissed with prejudice, but the state-based claims were dismissed without prejudice thereby enabling Plaintiff to re-raise those claims in state court.

Plaintiff appealed this Court's decision to the United States Court of Appeals for the Third Circuit. The Court of Appeals, in its June 27, 2014 Opinion, affirmed this Court's decision to dismiss the § 1983 age discrimination claim and the § 1983 retaliation claim against both Defendants. In addition, the Court of Appeals found that this Court properly dismissed Plaintiff's ADEA claim against Defendant Allegheny County. However, the Court of Appeals vacated this Court's dismissal of Defendant DA's Office with respect to the ADEA claim, and remanded this singular issue back to this Court for further consideration.

The Court of Appeals entered its Judgment on this Court's docket on June 27, 2014. Doc. no. 28. On July 1, 2014, this Court entered an Order setting a date for the initial case management conference, and set deadlines for the Parties to file their Rule 26(f) report, their proposed case management order, and their ADR stipulation. Doc. no. 29.

In the days following this Court's entry of its July 3, 2014 Order, the Court received a Motion to Dismiss Pursuant to Rule 12(b)(1), (6), and (7) and Brief in Support filed by Defendants (doc. nos. 33 and 34), as well as Plaintiff's Response and Brief in Opposition to the Motion to Dismiss. Doc. nos. 35 and 36. Three days after filing his Response and Brief in Opposition to the Motion to Dismiss, Plaintiff filed a Motion to Stay [this Court's] Proceedings. Doc. no. 37.

In his Motion to Stay Proceedings, Plaintiff argued that this Court did not yet have jurisdiction of the instant matter because the Court of Appeals had not entered a Mandate on the docket. Id. In addition, Plaintiff informed this Court that he had filed a Motion to Stay Issuance

of Mandate with the Court of Appeals, due to the fact that he had filed a Petition for Certiorari with the United States Supreme Court asking for a review of the § 1983 decisions. Id. Thus, given the procedural posture of the case, this Court granted Plaintiff's Motion to Stay Proceedings on July 29, 2014. Doc. no 39. The docket was administratively closed which terminated Defendant's Motion to Dismiss Pursuant to Rule 12(b)(1), (6), and (7).

The next docket activity was the entry of the Mandate by the United States Court of Appeals for the Third Circuit, dated February 24, 2015. Doc. no. 40. From the date of the Mandate (February 24, 2015), until February 27, 2018, when Defendant filed the instant Motion to Dismiss, the case remained completely idle. In that three-year time span, neither Party filed anything on the docket.

Defendant has now filed a Motion to Dismiss the entire civil action pursuant to Federal Rule of Civil Procedure 41, claiming Plaintiff's failure to prosecute this matter during the three-year time frame warrants a dismissal of this case. Doc. no. 44. Plaintiff filed a Brief in Opposition to this most recent Motion to Dismiss (see doc. no. 47), and in his response he primarily claims that he was waiting on this Court to administratively reopen this matter and "anticipated a decision . . . on the ADEA motion to dismiss[,]" meaning Defendant's previously terminated Motion to Dismiss Pursuant to 12(b)(1), (6), and (7). Doc. no. 33. Plaintiff claims he was not personally responsible for the hiatus and that neither he, nor his counsel, has shown any flagrant disregard for the Court. Defendant filed a Reply to Plaintiff's Brief (doc. no. 48) in Opposition and Plaintiff filed a Sur-Reply. Doc. no. 54. Defendant filed a Sur Sur-Reply brief. Doc. no. 55. In all five of these submissions, both Defendant and Plaintiff argue that the six *Poulis* factors weigh in their favor.

### III. Analysis

As previously expressed, prior to determining that dismissal is appropriate, this Court must balance the following six factors: "(1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense." *Poulis* 747 F.2d at 868.

Not all of these factors must be satisfied in order to justify dismissal, *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 221 (3d Cir. 2003), and no single factor is determinative, *see Hicks v. Feeney*, 850 F.2d 152, 156–57 (3d Cir. 1988). In addition, *Poulis* does not "provide a magic formula whereby the decision to dismiss or not to dismiss a plaintiff's complaint becomes a mechanical calculation easily reviewed" by the Court of Appeals for the Third Circuit. *Mindek v. Rigatti*, 964 F.2d 1369, 1373 (3d Cir. 1992).

### A. The Extent of the Party's Personal Responsibility

With respect to the first factor, a party may justly suffer dismissal "because of his counsel's unexcused conduct." *Link v. Wabash R.R.*, 370 U.S. 626, 633 (1962). The Court of Appeals for the Third Circuit has "increasingly emphasized visiting sanctions directly on the delinquent lawyer, rather than on a client who is not actually at fault." *Carter v. Albert Einstein Medical Ctr.*, 804 F.2d 805, 807 (3d Cir. 1986); *see also Burns v. MacMeekin*, 722 F.2d 32, 35 (3d Cir. 1983) (holding district court must consider alternative remedy to dismissal, because "[t]he brunt of the order [to dismiss] falls on plaintiffs, who have been deprived of the opportunity to litigate their case on the merits, when the only culpable party may be their

attorney.").  Thus, in determining whether dismissal is appropriate, the Court of Appeals will carefully consider whether the party bears personal responsibility for the action or inaction which led to the dismissal.  *Adams v. Trustees of New Jersey Brewery Employees' Pension Tr. Fund*, 29 F.3d 863, 873 (3d Cir. 1994).

However, the Supreme Court in *Link* held:

> There is certainly no merit to the contention that dismissal of [a plaintiff's] claim because of his counsel's unexcused conduct imposes an unjust penalty on the client.  [Plaintiff] voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent.  Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney.

370 U.S. at 633–34 (citation omitted).  *See aslo, Carter v. Albert Einstein Medical Center*, 804 F.2d 805, 807 (3d Cir. 1986) (holding "the *Link* principle [client is bound by his attorneys' actions/inactions] remains valid"); and *Betz v. Temple Health Systems* 659 Fed. Appx. 137, 141 (3d Cir. 2016) ("Any dissatisfaction [plaintiff] may have with her privately retained counsel and his decisions in her litigation, and any remedy to which she may be entitled, may be adjudicated in a professional malpractice action filed in state court, but it is not the proper subject of an appeal to this Court.")

Turning to the instant matter, it is the responsibility of the Plaintiff to prosecute his claim, and in this case, the Plaintiff was represented by counsel.  Plaintiff's counsel suggests that the three-year period of complete inactivity (*i.e.* the failure to prosecute) is due, in part, to the clerical error in failing to administratively re-open the docket after the Court of Appeals issued its Mandate.  See doc. no. 47.  Specifically, Plaintiff and his counsel argue:

> There has been a hiatus in the case since it was returned to the Court from the Third Circuit.  It appears from a review of the docket the case was

> administratively closed as the appeal was pending and that closure was
> never administratively removed when the mandate came in, a
> clerical error. Plaintiff nor his counsel had any tactical reasoning or
> benefit to be gained by the hiatus. Plaintiff and counsel reasonably
> believed that the mandate returning jurisdiction would reopen the case
> and anticipated a decision of the court on the ADEA motion to dismiss.
> While Defendant did not pursue adjudication of the motion, neither
> counsel reached out to the Court to determine the status of the pending
> motion which Plaintiff had responded to and briefed. The hiatus was not
> the result of personal tactics nor was it Plaintiff's personal responsibility
> to ensure Defendant's motion was adjudged.

Id. p. 4.

First, even if a clerical error was made by not reopening this docket upon issuance of the

Mandate, it is, indeed, harmless error. The Parties have been filing all of their Motions,

Responses, and Briefs related to this Rule 41(b) dismissal on the administratively closed docket

without incident. Thus, the "closed" status does not impede a Party from filing documents on the

docket.

Second, although Plaintiff points out the docket remained closed following the issuance

of the Mandate, Plaintiff simultaneously argues that he believed Defendant's Motion to Dismiss

Pursuant to Rule 12(b)(1), (6), and (7) "automatically renewed" itself and was properly before

this Court. This assumption was incorrect.[1] Plaintiff (through his counsel) could have filed

anything at any time if he or his counsel thought the Court should be taking some sort of action

on what they believed to be a "pending Motion to Dismiss" Pursuant to Rule 12(b)(1), (6), and

(7).

In addition, Plaintiff and his counsel had prior experience with this Court's Motions

practice in this very case and thus, knew that this Court summarily disposes of Motions in an

---

[1] However, when Plaintiff noted the docket remained "closed" and yet, simultaneously thought there was
a "pending [12(b)] Motion," it seems that this alone would have prompted Plaintiff to take some sort of
action – the very least of which would be to contact this Court to clarify such an incongruity at some point
during the past three years.

efficient and timely manner. The prior two Motions to Dismiss Pursuant to Rule 12(b) filed in this very case were fully briefed, and an Opinion and Order was issued by this Court, within 60 days of the filing of the first Motion, and within 45 days of the filing of the Second Motion. See doc. nos. 7, 13, 14, 16, 24, and 25. Because of the two prior experiences Plaintiff and his counsel had with this Court in swiftly adjudicating 12(b) Motions within days, it is difficult for this Court to accept that they would allow three years to pass without an Opinion and Order from this Court on what they believed to be a "pending [12(b)] Motion."

Moreover, at any point in time during the three years at issue, while waiting for this Court's ruling on a "pending" 12(b) Motion, Plaintiff could and should have noted that the docket remained closed and sought clarification from this Court and/or filed a Motion to Reopen the docket. Simply put, Plaintiff and his counsel should have taken some affirmative step to reignite his sole remaining federal claim before this Court. Instead, they did nothing.

This Court is aware that the fault for this three-year period of inactivity may lie primarily with counsel for the Plaintiff whose duty it was to pursue the ADEA claim against Defendant DA's Office on her client's behalf, but it is and was the client who was (presumably) unemployed during this time frame. In fact, the Plaintiff lost his job with Defendant DA's Office on February 18, 2011, and (again presumably) has not been rehired by Defendant for over seven years. Because Plaintiff has the most at stake, this Court finds it implausible that Plaintiff would not have at least inquired of his counsel over the last three years – since the date the Court of Appeals issued its Mandate – as to why his ADEA claim was not moving forward. Unfortunately, there is no offer of proof in either of Plaintiff's submissions (see doc. nos. 47 and 49) which suggest that the Plaintiff himself attempted to trigger some activity in this case through his attorney. Without any evidence or offer of proof that Plaintiff took any action or

made any inquiries of his attorney during the last three years, the Court finds that neither Plaintiff nor his attorney actively sought to advance this case after the Court of Appeals issued its Mandate on February 24, 2015.

Thus, this Court relies upon *Link, Carter* and *Betz* in finding that that this factor weighs in favor of dismissal.

### B.  Prejudice to the Adversary

With respect to the second factor, evidence of prejudice to an adversary "bear(s) substantial weight in support of a dismissal or default judgment." *Scarborough v. Eubanks*, 747 F.2d 871, 876 (3d Cir. 1984).  "Prejudice" includes "the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party."  *Id*.

In this case, Defendant notes that a seminal witness – Assistant Chief Richard Ealing – died while this case languished.  According to Defendant, the "bulk" of Plaintiff's age discrimination allegations center on Ealing.  Doc. no. 42, p. 2.

Defendant argues that without Ealing, there is an "irretrievable loss of evidence" which prejudices Defendant in its ability to adequately defend itself.  Doc no. 42, p. 10.  Conversely, Plaintiff contends that Dawn Botsford, the Director of Administration for Defendant DA's Office, and Chief Detective Dennis Logan, "were the decision makers" and key witnesses.  Doc. no. 54, p. 5.  Plaintiff also suggests that there are ample documents upon which the Parties can rely. Id.

The Court's review of Plaintiff's Amended Complaint identifies Ealing as Plaintiff's direct supervisor (doc. no. 15, ¶12B), and the numerous remaining allegations which reference Ealing support Plaintiff's general allegation that Ealing was "directly involved in many, if not

most of the pre-termination negative employment actions taken against Plaintiff." Id. at ¶12E. The Amended Complaint identifies Ealing as the person who directly targeted Plaintiff because of his age, and who made oral discriminatory remarks directly to Plaintiff or about Plaintiff in Plaintiff's presence. See doc. no. 15, ¶12F-12J; 12M; 12S-12Y; 12AA-12BB; 12EE-12FF; 12HH; 12KK-12LL; 12MM; 12PP-RR; 12YY-12AAA; 12CCC; 12EEE-12JJJ; 12LLL; and 12RRR-12TTT. The loss of Eagling is detrimental to the both the Plaintiff and his ability to prove the specific acts of discrimination which he alleges, as well as the Defendant's defense of this case. Many, if not most, discrimination cases can be boiled down to whom a jury believes. The weighing of the credibility Plaintiff's accusations against Ealing – the person who forms the center of Plaintiff's claims against Defendant DA's Office – and Ealing's demeanor and responses to those accusations is now irretrievably lost. Accordingly, the Court finds that this factor weighs in favor of dismissal.

### C. History of Dilatoriness

While there is no evidence of dilatory tactics on the part of either Party, there exists an unquestionably lengthy span of time – three years – in which this case remained completely inactive. As noted above, it is incumbent upon any plaintiff in any civil lawsuit to prosecute his or her claims, and failure to do so can be viewed as dilatory conduct. *See Bendix Aviation Corp. v. Glass,* 32 F.R.D. 375, 377 (E.D. Pa. 1961), aff'd, 314 F.2d 944 (3d Cir. 1963) ("[F]ailure to prosecute" under the rule does not mean that the plaintiff must have taken any positive steps to delay the trial or prevent it from being reached by operation of the regular machinery of the court. It is quite sufficient if he does nothing, knowing that until something is done there will be no trial.). Here, despite his two lengthy submissions, Plaintiff offers no compelling reason as to why he did not file anything

on the case docket for three years, or make any inquiry as to why his case had stalled.

Here again, the Court notes that Plaintiff had previously experienced, twice in this very case,

this Court's rapid disposal of two prior Motions to Dismiss. Those Motions were decided by

this Court within days of being fully briefed – not years. Therefore, the Court finds that this

factor weighs in favor of dismissal.

### D. Willful or Bad Faith Conduct by the Party

The Court in this case finds no evidence of "willful or bad faith" by either Party. Thus,

this factor does not weigh for or against dismissal of this action.

### E. Effectives of Sanctions Other Than Dismissal

Defendant argues that because of Ealing's death there are no alternative sanctions that are

effective. Ealing's death has detrimentally reduced a jury's ability to consider and weigh

Ealing's credibility against Plaintiff's credibility on most, if not all, allegations germane to the

sole remaining federal issue. Defendant is correct in noting that sanctioning Plaintiff s attorney

with a fine, as opposed to dismissal of this case, will not resolve the trial problem of a decreased

key witness. The Court finds this factor weighs in favor of dismissal.

### F. Meritoriousness of the Claim or Defense

Instead of explaining why he, Plaintiff, allowed three years to pass without doing

anything to move his ADEA claim forward against Defendant DA's Office, Plaintiff's two briefs

question why Defendant did not file a Motion with this Court renewing its 12(b)(1), (6), and (7)

Motion. This argument incorrectly shifts Plaintiff's burden to move this case forward to

Defendant DA's Office. Instead of explaining why he did nothing for three years, Plaintiff

attempts to blame Defendant and the Court for the three-year hiatus. Because Plaintiff failed to

offer the Court a plausible explanation as to why he and his attorney did nothing for three years,

the Court has been given no defense to weigh on Plaintiff's behalf.  Thus, this factor weighs in favor of dismissal.

### IV. Conclusion

The Court, after careful consideration of all of the submissions proffered by the Parties and the case law relevant to adjudicating this issue, the Court finds that the application of the six *Poulis* factors weighs in favor of dismissal.  An appropriate Order will follow.

s/Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc:  All counsel of record